IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH ZERTUCHE, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   No. 06-cv-567-MJR |
| | ) |
| BOARD OF TRUSTEES OF THE VILLAGE | ) |
| OF CARRIER MILLS, a body politic and | ) |
| corporate, | ) |
| | ) |
|    Defendant. | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Joseph Zertuche brought this action against his former employer, the Board of Trustees of the Village of Carrier Mills ("the Board"), for violation of his right to due process under the Fourteenth Amendment, 42 U.S.C. § 1983, and for breach of employment contract under Illinois common law. The Board moves for partial summary judgment on Zertuche's Count I (Due Process) and Count II (Breach of Contract), pursuant to Federal Rule of Civil Procedure 56 (Doc. 12).[1] For the reasons stated below, the Board's motion is granted.[2]

   **I.**     **FACTUAL ALLEGATIONS**

---

[1] It appears that the Board's titling its motion as "First Motion for Partial Summary Judgment" is a misnomer, given that the Board states that it "is entitled to judgment as a matter of law on Counts I and II of Plaintiff's Complaint." The Board's prayer is that summary judgment issue in its favor on Zertuche's complaint in its entirety and not for "partial" summary judgment.

[2] Because the Court dismisses this action on the Board's first motion for partial summary judgment, the Court will deny as moot the Board's second motion for partial summary judgment (Doc. 14). Therein, the Board sought summary judgment on Zertuche's state law claim based on alleged failure to file a timely charge of discrimination with the Illinois Human Rights Commission or the Equal Employment Opportunity Commission.

1

Joseph Zertuche, employed by the Board from July, 2001 until July, 2004 was, at the time of his termination, the Carrier Mills Chief of Police. His employment was terminated after a party which occurred on June 12, 2004.[3] Zertuche planned the party and brought an eight-gallon pony keg of beer. The party was held at the rural home of Dustin Penrod, a minor. Those present who were invited to the party were Zertuche's pregnant girlfriend Megan and four friends with whom Zertuche rode motorcycles, none of whom were underage. Several uninvited people were present, some of whom who were underage. When Zertuche arrived at the party and saw that there were minors present, he announced that there would be no underage drinking. He saw no one underage drinking, but others observed two underage males drinking. During the course of the party, Zertuche's wife April, from whom he was separated, arrived at the party, argued with Zertuche and struck him. He was intoxicated at the time. April went to her relative, Carrier Mills Mayor Audie Murphy, and told him that Zertuche was having an underage drinking party. Zertuche was suspended with pay on June 13, 2004. He believes that he was suspended because his ex-wife was related to the Murphys and not because of the alleged underage drinking party. The state police investigated the incident and submitted a report to the Board that no evidence was found of underage drinking. On July 22, 2004, the Board terminated Zertuche's employment following a closed Board meeting. Complaint ¶ 6. The Board informed Zertuche that his termination resulted from violations of the Handbook, specifically, Section 5 ("Ethical Standards) and Section 37(III)(a)[4] (personal use of Village equipment or vehicles). *Id.* ¶ 7.

---

[3] The sequence of events relating to the party and its immediate aftermath is taken from Zertuche's December 19, 2006 deposition.

[4] Mayor Murphy testified that Zertuche's use of village-owned equipment in violation of 37(III)(a) was not an issue. Doc. 23, Exhibit 2, Murphy deposition, 41:13-21. Rather, the violation involved was 37(III)(n), unsatisfactory performance or conduct. *Id.* 41:20-21.

2

At some point, subsequent to Zertuche's hiring, the Board had distributed an employee handbook ("Handbook") to its employees, including Zertuche. The Handbook set out the Board's policies, a code of conduct and disciplinary guidelines. Doc. 23, Plaintiff's Exhibit 1, Village of Carrier Mills Employee Handbook.  Under Section 5, "Ethical Standards," the Handbook stated, "The Village recognizes and respects the individual emloyee's [sic] right to engage in activities outside his or her employment which are private in nature and do not in any way conflict with, or reflect poorly on the Village.  Management reserves the right, however, to determine when an employee's activities represent a conflict with the Village's interests and to take whatever action is necessary to resolve the situation, including terminating the employee." Handbook at 3, 4.

Under Section 37, "General Work Rules," the Handbook stated that certain listed acts would "subject an employee to suspension, without pay or to immediate discharge, dependent on the degree or circumstances involved."  Handbook at 21.  Among the acts listed is "Unsatisfactory performance or conduct."  *Id.* at 22, 37(III)(n).  Disciplinary action, depending on the severity of the offense, consisted of either a written reprimand, suspension for up to three days without pay, or in "extreme circumstances," discharge. *Id*. at 26.  The Handbook stated that progressive discipline comprised three steps, written reprimand after a first offense, suspension after a second offense and possible termination after a third offense.  *Id*.  The Handbook further provided that the recognition of progressive discipline did not prohibit the Village from imposing discipline commensurate with the severity of the offense.  *Id*.  Furthermore, while the Handbook uses mandatory language in reference to disciplinary procedures, the list of reasons for discipline is not intended to be comprehensive.  *Id*. at 22.

Zertuche understood the policies contained in the Handbook to constitute the terms and conditions of employment offered by the Board. Complaint ¶ 5. After learning of these policies, he continued to work for the Board under the terms and conditions described therein. *Id*.

## II.   LEGAL STANDARD

Summary judgment is proper if the pleadings, depositions, interrogatory answers, admissions and affidavits reveal that there is no genuine issue as to any material fact *and* that the moving party is entitled to judgment as a matter of law. ***Vukadinovich v. Board of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 698-99 (7th Cir. 2002).**

The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. ***Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986);** *Salvadori v. Franklin Sch. Dist.*, **293 F.3d 989, 996 (7th Cir. 2002)**. Rather, to successfully oppose summary judgment, the nonmovant must present definite, competent evidence in rebuttal. *Vukadinovich***, 278 F.3d at 699.**

## III.   DISCUSSION

The Board challenges Zertuche's claims on three grounds: Zertuche had no protected interest in continuing employment; the contract or agreement on which Zertuche's claim is based violates the Statute of Frauds; and Zertuche received a due process hearing.[5]

In analyzing any due process claim, this Court must answer two questions: "(1) whether the defendants deprived the plaintiff[] of a constitutionally protected liberty or property interest; and (2), if so, whether that deprivation occurred without due process of law." ***Williams v. Seniff,* 342 F.3d 774, 786-87 (7th Cir. 2003)**.

---

[5]Because the Court finds that Zertuche was an at-will employee and that no employment contract was formed, it will not discuss the Board's argument regarding the Statute of Frauds.

In order to succeed on his due process claims, Zertuche must first show that he possessed a constitutionally-protected property interest in his job as chief of police. *See Border v. City of Crystal Lake,* **75 F.3d 270, 273 (7th Cir. 1996);** *Wolf v. City of Fitchburg,* **870 F.2d 1327, 1330 (7th Cir. 1989)**. Property interests "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth,* **408 U.S. 564, 577 (1972)**. Such protections may arise by way of statute, regulations, municipal ordinance, or by way of an express or implied contract. *Domiano v. Village of River Grove,* **904 F.2d 1142, 1147 (7th Cir. 1990)**. A property interest might also arise from a "common law" of employment established through rules or "mutually explicit" understandings between an employer and an employee. *Hermes v. Hein,* **742 F.2d 350, 355 (7th Cir. 1984)**.

Because Zertuche was employed in Illinois, the Court first must look to Illinois law in determining whether he had a property interest in his position. *Border,* **75 F.3d at 273**. Illinois is an employment-at-will state. *Harris v. Eckersall,* **771 N.E.2d 1072, 1074-75 (Ill.App. 1st Dist. 2002)**. As a result of this presumption, in Illinois, "absent a specific contract to the contrary, employment contracts are terminable at will. . . . [A]n at-will employee can be terminated at any time for any reason or no reason, [and] an at-will employee has no property interest in continued employment." *Id.* **at 1075.** "[A]bsent legislative, administrative, or contractual provisions to the contrary, a public employee in Illinois holds his office at the pleasure of the appointing power, which may remove him at any time." *Id.* **(quoting** *Willecke v. Bingham***, 662 N.E.2d 122, 125 (1996), citing** *Levin v. Civil Service Comm'n***, 288 N.E.2d 97 (1972))**.

5

Despite Illinois's presumption of "at-will" employment, Zertuche asserts that his employment was not "at will" but that he had a property right to continued employment based on the Employee Handbook, which set forth terms and conditions of employment, including provisions governing discipline and conduct warranting discharge. He points out that conspicuously missing from the Employee Handbook is any provision expressly stating that employment is considered to be "at will" and reserving the employer's right to discharge an employee for reasons other than those stated. Furthermore, the Handbook indicates that an employee would be discharged only in "extreme circumstances."

Under Illinois law, provisions or promises made in employee handbooks and manuals may, in some contexts, give rise to a legitimate claim of entitlement sufficient to be protected as a property interest. ***Campbell v. City of Champaign,* 940 F.2d 1111, 1112 (7th Cir. 1991)**. However, three requirements must be established before such a handbook or manual will be construed as creating a contract and constitutional entitlement. ***Border***, **75 F.3d at 273**. First, the language must contain a promise clear enough that an employee would reasonably believe that an offer had been made. *Id.* Second, the statement must be disseminated in such a manner that the employee "is aware of its contents and reasonably believes it to be an offer." *Id.* Finally, the employee must accept the offer by commencing or continuing to work after learning of the statement. *Id.*

The Court concludes that the Carrier Mills Employee Handbook does not satisfy these requirements, such that it could be construed as creating a contract and constitutional entitlement. The crux of the matter lies in the question of whether the Handbook contained a promise clear enough that an employee would reasonably believe that an offer had been made. Zertuche cites no specific provision indicating a clear promise of continued employment; rather,

6

he sets out, serially and in brief, a number of the provisions of the Handbook, including categories of employees, personnel records and reporting requirements, work rules and disciplinary guidelines, asserting that these terms and circumstances of employment are sufficient to constitute a promise of continued employment.

However, the mere provision of an employee handbook, containing terms and conditions of employment, without more, is insufficient to create an employment contract. "A person has a property interest in his or her job only where he or she had a legitimate expectation of continued employment based on a legitimate claim of entitlement. To show a legitimate expectation of continued employment, a plaintiff must show a specific ordinance, State law, contract or understanding limiting the ability of the board to discharge him." ***Krecek v. Board of Police Com'rs of La Grange Park*, 646 N.E.2d 1314, 1318-1319 (Ill.App. 1 Dist. 1995) (citation omitted)**. Furthermore, "[d]isclaiming language in a handbook may preclude the formation of an employment contract." ***Moss v. Martin*, 473 F.3d 694, 700-01 (7th Cir. 2007) (citation omitted)**. The case relied upon by Zertuche, ***Duldulao v. St. Mary of Nazareth Hospital Center*, 505 N.E.2d 314 (1987)**, is not to the contrary.

The premise of *Duldulao*, as relevant here, is that ". . . if an employee handbook contains a promise on which a reasonable employee would rely, the employee's action in taking up or continuing the employment after receiving the handbook is the acceptance of a unilateral offer and makes a legally enforceable contract." ***Campbell*, 940 F.2d at 1112**. The court in *Duldulao* quoted the very specific mandatory language in the handbook at issue therein, as follows: "'[a]t the end of 90 calendar days since employment the employee becomes a permanent employee and termination contemplated by the hospital *cannot occur* without proper notice and investigation' . . . . '[P]ermanent employees *are never* dismissed without prior written

7

admonitions and/or an investigation that has been properly documented' and 'three warning notices within a twelve-month period *are required* before an employee is dismissed, except in the case of immediate dismissal.'" ***Duldulao,*** **505 N.E.2d at 318 (emphasis in original.)**. The court found that the term "immediate dismissal" did not detract from the definiteness of the offer because it was well defined. *Id*. Moreover, the handbook contained no disclaimers to negate the promises made. *Id*.

The Carrier Mills Employee Handbook contains no comparable mandatory language. Instead, the Handbook provides that "[m]anagement reserves the right . . . to determine when an employee's activities represent a conflict with the Village's interests and to take whatever action is necessary to resolve the situation, including terminating the employee." Handbook, p. 4. There follows a non-comprehensive list of some types of activities that might reflect negatively on an employee's personal integrity or limit his ability to discharge his job duties in an ethical manner, such as borrowing money from clients or firms from which the Village buys services or supplies, and misusing privileged information or revealing confidential data. *Id*. Additionally, as set forth above, the Handbook provides for "discipline ranging from warning to suspension without pay, or to discharge, dependent on the degree of circumstances involved. . . ." The list, again not intended to be comprehensive, includes "[u]nsatisfactory performance or conduct." *Id.,* p. 22, 37(III)(n). Thus, the Handbook neither mandates warnings or suspension nor entitles an employee to a hearing prior to the ultimate sanction of discharge. Instead, an employee is subject to immediate discharge for unsatisfactory conduct, and the determination of whether circumstances warrant discharge is reserved to management.

Moreover, the Handbook includes a specific disclaimer: "[This handbook] is not an employment contract and is not intended to create contractual obligations of any kind."

Handbook, p. 2.  Emphasizing the disclaimer of contractual obligations is the Village's unilateral reservation of the right ". . . to change, revise, or eliminate any of the policies and/or benefits described in this handbook."  *Id*.  This language is very similar to a disclaimer considered by the Seventh Circuit Court of Appeals, where the Court stated, "Under Illinois law, this unambiguous disclaimer is sufficient to show that the Manual does not create a legal right."  *Moss,* **473 F.3d at 701**.

Zertuche's argument that the language in the disclaimer was rendered ineffective because it was not emphatic and conspicuous fails.  As in the disclaimer in *Moss*, which was found to be effective, the disclaimer was not buried or otherwise hidden but was in the first section of the Handbook and set in the same typeface.  *See id.*

Zertuche's argument that the work rules and disciplinary procedures set forth in the Handbook are "pertinent to the case at bar" is equally unavailing.  Zertuche does not elaborate on how these rules and procedures give rise to property interests.  "Mere procedural rights . . . do not of themselves give rise to property interests protected under the Fourteenth Amendment."  *Heck v. City of Freeport,* **985 F.2d 305, 311 (7th Cir. 1993)**.  Zertuche must establish that he had a property interest in his continued *employment*; in other words, that his *employment* was other than "at-will."  *See Campbell,* **940 F.2d at 1113 ("When the claimed deprivation is the loss of a job, the entitlement must be to the job, rather than to a set of disciplinary procedures.")**.  Other than the vague assertion that the work rules and disciplinary procedures are "pertinent," Zertuche has not cited to any other evidence within the Handbook that even arguably could be construed as a promise clear enough that an employee would reasonably believe that an offer of continuous employment had been made.  *See, e. g., Border*, **75 F.3d at 273 ("no 'clear promise' of continuing employment was made, and thus that the**

9

**handbook did not create a legitimate claim of entitlement to employment") (citing *Moore v. Illinois Bell Tel. Co.*, 155 508 N.E.2d 519, 521 (1987) (finding employee promised "nothing" where employee plan stated it was "a statement of management's intent and . . . not a contract or assurance of compensation") (additional citation omitted)**.

In sum, viewing all of Zertuche's evidence in the aggregate and in the light most favorable to him, this Court cannot conclude that there existed any "specific ordinance, State law, contract or understanding," *see Krecek*, **646 N.E.2d at 1319**, sufficient to establish a due process property interest in Zertuche's continued employment as the Carrier Mills Chief of Police.  As an Illinois employee, Zertuche's employment was "at-will," and he could have been terminated "at any time for any reason or no reason. . . ." *Harris,* **771 N.E.2d at 1074-75.**

Lacking a property interest in his continued employment, Zertuche was not entitled to any procedural due process regarding his termination.  *Williams*, **342 F.3d at 786-87**.  This Court **FINDS** that no genuine issues of material fact remain, and the Board is entitled to judgment as a matter of law on both counts of Zertuche's complaint.

Accordingly, pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 56(c),** the Court hereby **GRANTS in its entirety** Defendant Board of Trustees of the Village of Carrier Mills' motion for summary judgment (Doc. 12), and **GRANTS** summary judgment in favor of Defendant and against Plaintiff.  Defendant's second motion for partial summary judgment (Doc. 14) is **DENIED as moot**.  This case is now closed.

    **IT IS SO ORDERED.**

    **DATED this 17th day of August, 2007**

                                         **s/Michael J. Reagan**
                                         **MICHAEL J. REAGAN**
                                         **United States District Judge**